# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case number 4:12cv1058 TCM |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This 42 U.S.C. § 405(g) action for judicial review of the final decision of Carolyn W. Colvin, the Acting Commissioner of Social Security (Commissioner), denying the applications of Rebecca Cunningham (Plaintiff) for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 401-433, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381-1383b, is before the undersigned for review and final disposition pursuant to the parties' written consent. See 28 U.S.C. § 636(c).

## Procedural History

Plaintiff applied for DIB and SSI in March 2009, alleging she had become disabled on January 12, 2009, by arthritis in her knees; pain in her low back and upper right thigh;

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security in February 2013 and is hereby substituted for Michael J. Astrue as defendant. See 42 U.S.C. § 405(g).

and pain and swelling in her left foot. (R.[2] at 87-92, 116.) Her applications were denied initially, on reconsideration, and following a hearing held in October 2010 before Administrative Law Judge (ALJ) Randolph E. Schum. (Id. at 7-29, 31-40.) The Appeals Council denied Plaintiff's request for review, effectively adopting the ALJ's decision as the final decision of the Commissioner. (Id. at 1-3.)

### Testimony Before the ALJ

Plaintiff, represented by counsel, and Delores E. Gonzalez, M.Ed., V.R.C (Vocational Rehabilitation Counselor), testified at the administrative hearing.

Plaintiff, fifty-eight years old at the time of the hearing, testified that she had graduated from high school and from barber college. (Id. at 17-18.) Plaintiff was 5 feet 8½ inches tall and weighed 296 pounds. (Id. at 19.) Her weight had remained steady during the past few years. (Id.)

Plaintiff had been self-employed from 1994 to 1996 when she owned a bakery; had then worked for five years at a cheesecake facility; and had also worked at Wal-Mart as a cake decorator and cashier. (Id. at 18-19.) She left the job at Wal-Mart on January 12, 2009, because of back and leg pain. (Id. at 19.) There were no jobs at Wal-Mart that allowed someone to sit down. (Id.) She had not looked for work anywhere else. (Id.)

Plaintiff sometimes walks with a cane when her left leg or hip gives out on her. (Id. at 20.) The cane has not been prescribed by any doctor. (Id.) She has had x-rays of her right

---

[2]References to "R." are to the administrative record filed by the Commissioner with her answer.

knee, but not of her left.  (Id.)  Plaintiff also has high blood pressure, which is controlled by medication.  (Id. at 20-21.)

Asked to describe why she cannot work fill-time, Plaintiff replied that she has arthritis in her hands.  (Id. at 21.)  She started complaining of this approximately one year ago.  (Id.)  The doctors have not taken any x-rays; "[t]hey just feel it [is] arthritis."  (Id.)

Plaintiff also has anxiety, but she has not asked for any help for it.  (Id.)

Ms. Gonzalez testified as a vocational expert.

The ALJ asked her to assume a hypothetical person of Plaintiff's age, education, alleged date of onset, "some past work experience," and the ability to perform the full range of medium work.  (Id. at 22.)  Ms. Gonzalez replied that this person could perform Plaintiff's past work as a cake decorator, cashier, or counter worker in a bakery, all of which were light, semi-skilled, or as a small business owner, which was light and skilled.  (Id. at 23.)  Her past work as a baker would have been heavy work.  (Id.)  If the person could perform the full range of light work, the four cited jobs would remain.  (Id.)  If the person could only perform the full range of sedentary work, none of the jobs cited would remain.  (Id.)

Ms. Gonzalez further stated that her testimony was consistent with the *Dictionary of Occupational Titles* (DOT) and with *Selected Characteristics of Occupations*.  (Id. at 50.)

## **Medical and Other Records Before the ALJ**

The documentary record before the ALJ included forms completed as part of the application process, documents generated pursuant to Plaintiff's applications, records from health care providers, and various assessments of her physical capabilities.

When applying for DIB and SSI, Plaintiff completed a Disability Report. (Id. at 115-22.) She was then 5 feet 8 inches tall and weighed 295 pounds. (Id. at 115.) Her impairments, see pages one to two, supra, limit her ability to work by causing swelling and pain if she stands for longer than a few hours, as her past jobs required. (Id. at 116.) Also, she cannot sit for long or lift or carry anything heavy. (Id.) Her memory is decreasing with age. (Id.) Her impairments first bothered her in June 2007 and prevented her from working on January 12, 2009. (Id.) She takes prescription medication for knee, leg, foot, and back pain and for high blood pressure. (Id. at 120.)

Plaintiff also completed a Function Report. (Id. at 130-37.) Asked to describe what she does from when she awakes until she goes to bed at night, she reported that she makes coffee, sits at the computer or reads or watches television, fixes breakfast, cleans the kitchen, sits down again, makes lunch, cleans the bedroom, sits down, cooks dinner, cleans the kitchen, and sits down. (Id. at 130.) She sometimes goes to the store. (Id.) Her husband and son are both disabled, but are able to care for themselves with the exception of cooking and cleaning. (Id. at 131.) Before her impairments, she was able to stand, walk, and work an eight-hour shift. (Id.) She sometimes wakes up at night to take pain medication. (Id.) Her impairments do not affect her abilities to dress, bathe, and do other personal hygiene tasks. (Id.) Her household chores include laundry (once a week), cleaning (daily), and ironing (when necessary). (Id. at 132.) Once a day, she goes outside for a short walk. (Id. at 133.) Approximately once a week, she shops for a couple of hours for groceries and other household items. (Id.) Her hobbies include reading, using the computer, watching television,

and crocheting. (Id. at 134.) These interests have not changed, but the length of time she can sit and do them is less. (Id.) Twice a month she visits with friends to play cards or other games. (Id.) Her impairments adversely affect her abilities to lift, bend, stand, kneel, and climb stairs. (Id. at 135.) The farthest she can walk is several blocks before having to rest for fifteen minutes. (Id.) She finishes what she starts and can pay attention as long as needed. (Id.) She follows written and spoken instructions well, and has no problem getting along with authority figures. (Id. at 135-36.) She handles changes in routine well, but does not handle stress well. (Id. at 136.)

On a Pain Questionnaire, Plaintiff reported that her pain began in March 2005, was currently in her right knee and upper right leg, and was spreading to her back and left leg. (Id. at 126-29.) Because of her pain, she cannot stand for longer than two hours. (Id. at 126.) She reported both that medication does not relieve the pain and that medication relieves the pain in an hour if she does not have to stand. (Id.) When it does relieve the pain, medication keeps the pain away for six hours. (Id.) The medication causes drowsiness. (Id.) Heating pads and elevating her legs also help relieve the pain. (Id. at 127.) The pain first began to affect her activities in June 2008. (Id.) Her daily activities include cleaning "a little" and cooking. (Id.) Once a week, she shops. (Id.) Once or twice a month, she visits family members. (Id.)

Plaintiff completed a Disability Report – Appeal form after the initial denial of her applications. (Id. at 156-61.) Beginning in 2009, she is unable to sit, stand, or walk for eight continuous hours. (Id. at 156.) She is also depressed. (Id.)

The relevant medical records[3] before the ALJ are summarized below in chronological order.

In June 2008, Plaintiff went to the emergency room at St. Luke's Baptist Hospital in San Antonio, Texas, with complaints of right knee pain. (Id. at 174-84.) She explained that she had been getting out of a truck four days earlier when she felt something "pop." (Id. at 178.) The knee had become increasingly swollen and painful. (Id.) She had a history of arthritis. (Id. at 182.) X-rays showed no fracture or dislocation, but did reveal moderate degenerative changes. (Id. at 183, 186.) Plaintiff was diagnosed with a sprained knee, given a knee immobilizer, instructed to take the knee out of the immobilizer and move it several times a day, instructed also to follow-up in seven to ten days, and discharged within three hours. (Id. at 175, 184.) She was released from work for two days. (Id. at 184.)

Four days later, Plaintiff was seen by Bryan W. Kaiser, M.D., for her knee pain. (Id. at 252.) A magnetic resonance imaging (MRI) of her knee showed no evidence of a meniscal tear, but did reveal a degenerative tear of the medial meniscus and some degenerative changes of the lateral meniscus, mild degenerative arthritis, medial and lateral compartments with chondral loss, and grade 2 osteophytes in the majority of the knee and grade 3 in the patellofemoral groove. (Id. at 251.) Dr. Kaiser recommended a course of glucosamine and chondroitin sulfate and a low impact exercise program. (Id.) Plaintiff was to follow-up in six weeks. (Id.)

---

[3]Records relating to a 2005 hysterectomy and 2009 gynecological examination are not discussed. (See id. at 243-44, 268-313.)

In February 2009, Plaintiff went to the Clay Gruesbeck Medical Clinic for pain in both knees. (Id. at 188.) She was diagnosed with arthritis and hypertension and prescribed Vicodin[4] and Naproxen.[5] (Id.)

In April, Plaintiff consulted Penny Hicks, A.P.N. (Advanced Practical Nurse), with the Matthew Walker Comprehensive Health Center (MWCHC), for hypertension that started that year and was "currently improving" and for arthritis that had begun six years earlier and was in both knees. (Id. at 208-11, 247-50.) The discomfort caused by the arthritis was persistent and aggravated by activity, standing, walking, climbing stairs, arising from a chair, and cold or rainy weather. (Id. at 208.) It was relieved by prescription and over-the-counter medications. (Id.) Her gait was normal. (Id. at 209.) She had no symptoms and weakness in her bones and joints, and a full range of motion in her spine and upper and lower extremities. (Id. at 209, 210.) She was diagnosed with benign essential hypertension and arthritis, and was prescribed lisinopril [6]and Naproxen. (Id.)

In May, Plaintiff saw Kathryn Beesley, M.S.N., F.N.P, with MWCHC about right eye irritation. (Id. at 205-06, 245-46.) Plaintiff reported that she had not taken her blood pressure medication that day. (Id. at 206.) She was alert and oriented and presented with no unusual anxiety or evidence of depression. (Id.)

---

[4]Vicodin is a combination of hydrocodone, an opioid analgesic, and acetaminophen. Physicians' Desk Reference, 573 (65th ed. 2011) (PDR). It is prescribed for the relief of moderate to moderately severe pain. Id.

[5]Naproxen is prescribed for relief of the symptoms of osteoarthritis and rheumatoid arthritis. Id. at 761.

[6]Lisinopril is prescribed for the treatment of hypertension. Id. at 241, 2242.

- 7 -

Plaintiff was seen by Veronica Hill, A.P.N., with MWCHC in August for complaints of bilateral knee pain and swelling, hypertension, and a dry cough. (Id. at 200-02, 240-42.) The pain was achy and dull and was aggravated by activity, standing, walking, and climbing stairs. (Id. at 200.) The cough began two weeks earlier. (Id.) Ms. Hill discussed a weight reduction program, with an emphasis on exercise, with Plaintiff. (Id. at 201.) She prescribed Plaintiff lisinopril, Ultracet,[7] and Lasix (a diuretic). (Id.)

In October, Plaintiff consulted Ida Williams, M.D., at MWCHC for her arthritis pain. (Id. at 237-39.) Plaintiff described the pain as beginning one month earlier and located in the wrists, hands, and knees. (Id. at 237.) It was intermittent. (Id.) There were no aggravating factors. (Id.) Relieving factors included prescription medications. (Id.) Plaintiff was then taking only lisinopril. (Id.) On examination, Plaintiff had a mildly reduced range of motion in both hands, walked with a limp, and had mild swelling in both knees. (Id. at 238.) She was prescribed Ultram[8] in addition to the lisinopril. (Id. at 239.)

Plaintiff again saw Ms. Hill in January 2010 for shooting pain in her neck and for a follow-up visit for her knee and leg pain. (Id. at 235-36.) On examination, she had moderate pain with motion and tenderness in each knee. (Id. at 236.) In addition to the lisinopril and Ultram, Plaintiff was prescribed Flexeril.[9] (Id.)

---

[7]Ultracet, a combination of acetaminophen and tramadol, is prescribed for the treatment of moderate to severe pain. Ultracet, http://www.drugs.com/ultracet.html (last visited Sept. 16, 2013).

[8]Ultram is a brand name for tramadol, and is prescribed for the relief of moderate to severe pain. See Ultram, http://www.drugs.com/ultram.html (last visited Sept. 16, 2013).

[9]Flexeril (cyclobenzaprine) is a muscle relaxant. Flexeril, http://www.drugs.com/search.php?searchterm=flexeril (last visited Sept. 16, 2013).

- 8 -

Plaintiff returned to MWCHC in February for refills of her hypertension and joint pain medications. (Id. at 233-34.)

In March, Plaintiff complained to Ms. Hill of arthritis pain in her hands and knees that was aggravated by activity, gripping, walking, and climbing stairs and was relieved by prescription medications. (Id. at 230-32.) Plaintiff also wished to have "disability paperwork filled out." (Id. at 230.) Plaintiff described her bilateral knee pain as beginning three years earlier, severe, and worsening. (Id. at 231.) The hand pain had begun one year earlier, was moderate, and was made worse by use. (Id.) She did not have any back pain. (Id.) Weight loss was again discussed; Plaintiff was to try to lose five pounds in the next three months. (Id.) Her medications included lisinopril, Ultram, Naproxen, and Flexeril. (Id.)

Four days later, Ms. Hill completed a form Medical Opinion Re: Ability to Do Work-Related Activities (Physical) on Plaintiff's behalf.[10] (Id. at 253-56.) She listed Plaintiff's impairments as hypertension, osteoarthritis, and morbid obesity. (Id. at 253.) With her impairments, Plaintiff could lift and carry no more than ten pounds occasionally and less than ten pounds frequently. (Id. at 253-54.) She could stand and walk for less than two hours during an eight-hour with normal breaks and "without experiencing pain or fatigue to the point of distraction." (Id. at 254; emphasis omitted.) She could sit for approximately six hours with the same limitations. (Id.) She could sit for sixty minutes and stand for five before having to change position. (Id.) She would have to walk around every five minutes for five minutes. (Id.) She did not, however, have to shift positions at will from sitting or

---

[10]The form is addressed to "Dr. Veronica Hill." Ms. Hill is not a doctor.

standing/walking and did not need to lie down or elevate an extremity. (Id. at 255.) She could occasionally twist, stoop, bend, crouch, and climb stairs and ladders. (Id.) Her abilities to reach, handle, finger, feel, push, and pull were not affected by her impairments. (Id. at 256.) She would need to be absent from work three or more times a month. (Id.)

In July, Plaintiff consulted Jonathan Baghdadi, M.D., with the Washington University in St. Louis Physicians as a new patient. (Id. at 262-67.) Her complaints included bilateral knee pain since 2005 caused by arthritis; a burning and tingling pain in her right lower back and lateral thigh since 2008; aching and cramping in both hands with repetitive movement, the aching having begun one year earlier and progressed to cramping four months ago; occasional pain in her right shoulder, increasing in frequency six to eight months earlier; and a dry, hacking cough when lying down. (Id. at 264.) Plaintiff reported that she was able to walk up one flight of stairs without stopping, although she was "somewhat limited by pain in her knees," and to wash dishes and cook at home without becoming short of breath. (Id.) She did not have difficulty walking or with activities of daily living, including cooking, cleaning, shopping, and driving. (Id. at 262.) At present, her pain was in her low back; was constant, burning, and sharp; and was a four on a ten-point scale. (Id. at 263.) She was 5 feet 8 inches tall and weighed 296 pounds. (Id. at 265.) Her Body Mass Index (BMI) was 45.01. (Id.) On examination, she had no edema, clubbing, or cyanosis in her extremities; she was nontender to palpation of her paraspinal areas; she had a limited range of motion in her right shoulder compared to her left; and she had crepitus (a crunching or popping) in both

knees. (Id.) Straight leg raises were negative.[11] (Id.) Her arthritis was "well-managed on Tramadol, Naproxen, and Flexeril," although it limited her ability to exercise, move around her house, and perform activities of daily living. (Id.) She was to be referred to physical therapy and was referred to a social worker to discuss ways she might pay for such. (Id.) Weight loss was promoted. (Id.) She reported missing one dose of lisinopril each week. (Id.) The dosage was increased, and she was advised on a method to ensure she took the pills daily. (Id.) She was started on Flonase and cetirizine for her cough. (Id.) She was to return in two months. (Id. at 266.)

Plaintiff did return. (Id. at 257-61.) She reported that she was taking the Flexeril only at night because it caused drowsiness. (Id. at 257.) She did not want to try any new medications. (Id.) Her cough had resolved on the cetirizine. (Id.) She was "under a lot of stress at home," having "recently moved from Tennessee and living with numerous children/grandchildren." (Id.) She took care of three grandsons during the day. (Id.) She could not afford certain medications. (Id.) Her disability hearing was the next month. (Id.) Her pain level was a four. (Id. at 259.) She was planning to start physical therapy after her Medicaid application was approved; she could not currently afford it. (Id. at 258.) She was encouraged to lose weight; she was not interested in seeing a dietician. (Id.) She was to return in three or four months or as needed. (Id.)

Also before the ALJ were two assessments of Plaintiff's impairments.

---

[11]"During a [straight leg raising] test a patient sits or lies on the examining table and the examiner attempts to elicit, or reproduce, physical findings to verify the patient's reports of back pain by raising the patient's legs when the knees are fully extended." **Willcox v. Liberty Life Assur. Co. of Boston**, 552 F.3d 693, 697 (8th Cir. 2009) (internal quotations omitted).

Pursuant to her applications, Plaintiff was examined in June 2009 by Jerry Lee Surber, M.D. (Id. at 190-93.) Plaintiff used a cane in her right hand. (Id. at 190.) She explained that she had problems with obesity, hypertension, shortness of breath on minimal exertion with no chest pain, gastroesophageal reflux disease (GERD) with a hiatal hernia, and irritable bowel syndrome (IBS). (Id.) In cold and rainy weather, she had pain that was accompanied by stiffness and fatigue. (Id.) She also had intermittent pain in her neck, knees, shoulders, left foot and ankle, and lower back, this last pain being greater on the right than on the left. (Id.) She had been told she has arthritis. (Id.) Her current medications included hydrocodone, Naproxen, and lisinopril with hydrochlorothiazide. (Id.) On examination, she was 5 fee 7½ inches tall and weighed 302 pounds. (Id. at 191.) She was alert and oriented to time, place, and person; was cooperative; and was in no acute distress. (Id.) She had 3/4½ bilateral pretibial and ankle edema, but no hand or wrist edema. (Id. at 192.) She could forward flex to 90 degrees when standing and sitting; could laterally flex to the right and to the left to 25 degrees, and could rotate to the right and to the left to 25 degrees. (Id.) She had a full range of motion in her shoulders, elbows, hips, knees, ankles, wrists, hands, and fingers. (Id.) There was no gross asymmetry in her major muscle groups and no evidence of any muscle wasting. (Id.) She could do a voluntary squat and stand maneuver half-way down, although she complained of tightness in her knees, neither of which was tender. (Id.) She had equal upper and lower limb and grip strengths bilaterally. (Id.) She was able to move easily, albeit slowly, from the chair to the examination table. (Id.) She had "a low waddling side-to-side type gait." (Id.) She appeared shaky when standing on only one foot.

(Id.) She could tandem and heel-toe walk. (Id.) Dr. Surber's impression was of morbid obesity and the other diagnoses Plaintiff had related as her medical history. (Id. at 192-93.) He opined that she could lift or carry at least ten to twenty-five pounds for up to one-third to one-half of an eight-hour day, stand or walk with normal breaks for up to two to four hours during an eight-hour day, and sit with normal breaks for up to six to eight hours. (Id. at 193.) He further opined that Plaintiff's "[i]mpairment-related physical limitations are chiefly in regard to the need for appropriate current diagnostic evaluations concerning her complaints in addition to ongoing management of her other medical problems all coordinated by her primary care physician with appropriate specialty referrals as needed." (Id.)

Molly S. Chatterjee, M.D., marked on a Tennessee Department of Disability Services Medical Consultant Analysis[12] form that Plaintiff's physical impairments were not severe. (Id. at 194-97.)

### The ALJ's Decision

The ALJ first determined that Plaintiff had met the insured status requirements of the Act on January 12, 2009, and remained insured throughout the relevant period. (Id. at 12.) He next found that she had not engaged in substantial gainful activity since her alleged onset date. (Id.)

The ALJ then determined whether Plaintiff had a severe impairment. He found that her allegations of an arthritic left knee, low back pain, right thigh pain, memory problems, and anxiety were not supported by any medical evidence. (Id.) Her impairments of obesity,

---

[12]Initially, when Plaintiff applied for DIB and SSI she resided in Tennessee.

arthritic hands, and an arthritic right knee were not severe. (Id.) Specifically, they did not more than minimally limit her basic work activities, e.g., sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, and handling. (Id.) Reviewing Plaintiff's medical records, the ALJ noted that the MRI of her right knee showed only mild degenerative arthritis and that exams in early 2009 to early 2010 "did not demonstrate any ongoing, significant musculoskeletal or neurological deficits" or demonstrate any consistent reduced range of motion, swelling, or tenderness in the allegedly affected joints or bones. (Id. at 13.) He noted the assessments of Dr. Surber and Ms. Hill of Plaintiff's exertional limitations. (Id.) He declined to give those of Ms. Hill any weight because (a) she is not an acceptable medical source and (b) they were inconsistent with the exam results at MWCHC. (Id.) He also declined to give Dr. Surber's opinions of Plaintiff's lifting, standing, and sitting restrictions any weight because they (a) were inconsistent with his exam results and (b) were based on Plaintiff's complaints and the need for "'medical management.'" (Id.) The ALJ further noted that Plaintiff's right knee condition, present since at least mid-2008, did not preclude her from working at jobs that required she stand or walk most of the work day. (Id.) She sometimes used a cane, but it was not prescribed. (Id.)

The ALJ found the opinion of Dr. Chatterjee that Plaintiff did not have a severe impairment to be consistent with the objective medical record and to be persuasive. (Id. at 12.) Because Plaintiff did not have a severe impairment, she was not disabled within the meaning of the Act. (Id. at 14.)

## Legal Standards

Under the Act, the Commissioner shall find a person disabled if the claimant is "unable to engage in any substantial activity by reason of any medically determinable physical or mental impairment," which must last for a continuous period of at least twelve months or be expected to result in death. 42 U.S.C. § 1382c(a)(3)(A). Not only the impairment, but the inability to work caused by the impairment must last, or be expected to last, not less than twelve months. **Barnhart v. Walton**, 535 U.S. 212, 217-18 (2002). Additionally, the impairment suffered must be "of such severity that [the claimant] is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether . . . a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; **Hurd v. Astrue**, 621 F.3d 734, 738 (8th Cir. 2010); **Gragg v. Astrue**, 615 F.3d 932, 937 (8th Cir. 2010); **Moore v. Astrue**, 572 F.3d 520, 523 (8th Cir. 2009). "Each step in the disability determination entails a separate analysis and legal standard." **Lacroix v. Barnhart**, 465 F.3d 881, 888 (8th Cir. 2006). First, the claimant cannot be presently engaged in "substantial gainful activity." See 20 C.F.R. §§ 404.1520(b), 416.920(b); **Hurd**, 621 F.3d at 738. Second, the claimant must have a severe impairment. See 20 C.F.R. §§ 404.1520(c), 416.1520(c). The Act defines

"severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities . . . ." Id.

At the third step in the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment which meets or equals one of the impairments listed in the regulations and whether such impairment meets the twelve-month durational requirement. See 20 C.F.R. §§ 404.1520(d), 416.920(d) and Part 404, Subpart P, Appendix 1. If the claimant meets these requirements, she is presumed to be disabled and is entitled to benefits. **Warren v. Shalala**, 29 F.3d 1287, 1290 (8th Cir. 1994).

At step four, the ALJ determines "'whether a claimant's impairments keep her from doing past relevant work.'" **Wagner v. Astrue**, 499 F.3d 842, 853 (8th Cir. 2007) (quoting Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996)). If the ALJ holds at step four of the process that a claimant cannot return to her past relevant work, the burden shifts at step five to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. **Pate-Fires v. Astrue**, 564 F.3d 935, 942 (8th Cir. 2009); **Banks v. Massanari**, 258 F.3d 820, 824 (8th Cir. 2001).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "'if it is supported by substantial evidence on the record as a whole.'" **Wiese v. Astrue**, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)); accord **Dunahoo v. Apfel**, 241 F.3d 1033, 1037 (8th Cir. 2001). "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" **Partee v. Astrue**, 638 F.3d 860, 863

(8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. **Moore**, 623 F.3d at 602; **Jones v. Astrue**, 619 F.3d 963, 968 (8th Cir. 2010); **Finch**, 547 F.3d at 935. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, **Dunahoo**, 241 F.3d at 1037, or it might have "come to a different conclusion," **Wiese**, 552 F.3d at 730. "'If after reviewing the record, the [C]ourt finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the [C]ourt must affirm the ALJ's decision.'" **Partee**, 638 F.3d at 863 (quoting Goff, 421 F.3d at 789). See also **Owen v. Astrue**, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

## Discussion

Plaintiff argues that the ALJ erred by finding at step two that she had no severe impairments. For the reasons set forth below, the Court agrees.

"[T]he sequential evaluation process may only be terminated at step two when an impairment or combination of impairments would have no more than a minimal effect on the claimant's ability to work." **Nguyen v. Chater**, 75 F.3d 429, 431 (8th Cir. 1996); accord Social Security Ruling 96-3p, 1996 WL 374181, * (S.S.A. 1996). "Denial of benefits at step two 'is justified only for those claimants whose medical impairments are so slight that it is

unlikely they would be found to be disabled even if their age, education, and experience were taken into account.'" **Nguyen**, 75 F.3d at 431 (quoting Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995)). The claimant bears the burden of proof at step two, "but the burden of a claimant at this stage of the analysis is not great." **Caviness v. Massanari**, 250 F.3d 603, 605 (8th Cir. 2001).

The ALJ found that Plaintiff's impairments of obesity, arthritic hands, and an arthritic right knee were not severe. Plaintiff's most recent BMI is Level III obesity, the highest level, and is termed "'extreme.'" Social Security Ruling 02-01p, 2000 WL 628049 at *2 (S.S.A. 2002). This level "represent[s] the greatest risk of developing obesity-related impairments." Id. Although obesity does not "correlate with any specific degree of functional loss," id., it does "commonly lead[] to, and often complicate[], chronic diseases of the . . . musculoskeletal body systems," id. at *3. Additionally, although "[t]here is no specific level of weight or BMI that equates with a 'severe' or 'not severe' impairment," the impact of obesity on a claimant's functioning should be individually assessed when determining whether the obesity is severe. Id. at *4. The ALJ's brief decision includes no indication of such an assessment.

Dr. Surber diagnosed Plaintiff with morbid obesity and opined that she could stand or walk for up to two hours in an eight-hour workday. Ms. Hill opined that Plaintiff could stand and walk for less than two hours in an eight-hour workday. These limitations are consistent with the definition of sedentary work as requiring only occasional standing and walking, with "occasional" being defined as "occurring from very little up to one-third of the

time, and would generally total no more than about 2 hours of an 8-hour workday." Social Security Ruling 96-9p, 1996 WL 374185,*3 (S.S.A. 1996). Sedentary work is the most restrictive level of work in exertional terms. See 20 C.F.R. §§ 404.1567, 416.967. A limitation to sedentary work reflects more than a minimal effect on a claimant's ability to work.

The ALJ discounted Dr. Surber's and Ms. Hill's assessments of Plaintiff's functional limitations as being based on her complaints or being inconsistent with the medical evidence or, in respect to Ms. Hill, not being from an acceptable medical source. There is, however, no discussion of Plaintiff's credibility. Cf. **Nguyen**, 75 F.3d at 431 (ALJ evaluated credibility of claimant's complaints when determining whether impairments were severe). And, although Ms. Hill is not an acceptable medical source, see 20 C.F.R. §§ 404.1513(a), 416.913(a) (listing such sources), she is an "[o]ther source" whose evidence on how Plaintiff's impairments affect her ability to work may be considered. See 20 C.F.R. §§ 404.1513(d), 416.913(d). Although her evidence can not establish a medically determinable impairment, her evidence can be used to show the severity of an impairment. See **Sloan v. Astrue**, 499 F.3d 883, 888 (8th Cir. 2007).

The ALJ did rely on Dr. Chatterjee's opinion that Plaintiff's impairments were not severe. As noted by Plaintiff, however, and not contradicted by the Commissioner, Dr. Chatterjee's specialty is gynecology and she did not exam Plaintiff.

Additionally, the ALJ did not discuss Plaintiff's use of strong pain medication and whether that use reflected on the severity of her impairments. Cf. **Nguyen**, 75 F.3d at 430

(osteoarthritis in knees was not severe; pain was relieved by use of mild, anti-inflammatory medication); **Huddleston v. Colvin**, 2013 WL 4498674, *2-3 (W.D. Ark. 2013) (finding that ALJ had not erred in not finding foot pain to be severe impairment; pain was not listed as a problem in application for disability; claimant was not taking medication for or undergoing treatment for pain; and claimant acknowledged that he had no physical limitations in meeting his personal care needs).

## Conclusion

The ALJ's conclusion that Plaintiff's obesity, arthritic hands, and arthritic right knee are not severe lacks support in the record. The case will be reversed for further proceedings, including an assessment of the effect of Plaintiff's obesity on her functioning, an assessment of the credibility of her descriptions of her functional limitations, and for such additional findings as are then considered necessary by the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is REVERSED and this case is REMANDED for further proceedings as discussed above.

An appropriate Order of Remand shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  19th  day of September, 2013.